### In re WATERS-COLVER CO.

#### (District Court, E. D. New York. July 14, 1913.)

BANKRUPTCY (§ 188*)—PROPERTY PASSING TO TRUSTEE—RETENTION OF LIEN
  BY SELLER—CONDITIONAL SALE.

  Where a creditor furnished boilers to the bankrupt, with the understanding that they were to be used in a vessel being built by the bankrupt under contract for the United States, the creditor could not retain title to, nor a lien upon, the boilers, nor did it have any equitable right in, or lien upon, the contract or its proceeds, as against the trustee or other creditors, in view of Rev. St. § 3477 (U. S. Comp. St. 1901, p. 2320), which makes void an assignment of any interest in government contracts.

  [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 286–289, 291–295; Dec. Dig. § 188.*]

In the matter of the Waters-Colver Company, bankrupt. On report of commissioner on petition of the Badenhausen Company. Report confirmed, and petition denied.

Hunt, Hill & Betts, of New York City (William H. Peck, of New York City, of counsel), for petitioners.

Alexander & Ash, of New York City (Mark Ash, of counsel), for trustee.

CHATFIELD, District Judge. The facts are stated in the commissioner's report and need not be repeated. The record shows that the Badenhausen Company wished to have the Waters-Colver Company use the Badenhausen boilers in a government contract for the tug Vigilant. They asked the Waters-Colver people to obtain authority therefor. The contract was signed with that end in view, and other arrangements were made with the government showing that all parties contemplated that title in the boilers would pass to the government.

Such a situation would defeat reservation of title to the boilers themselves, and the special commissioner has found that the parties did not in fact intend the transfer to be a conditional sale. The clause reserving title was in the body of the contract, which differs from the facts in the case of In re George O. Hassam & Son (D. C.) 153 Fed. 932; but the commissioner's finding makes the situation like the one passed upon in that case. This finding should be upheld unless plainly contrary to the evidence (In re Stout [D. C.] 109 Fed. 794; In re Schwartz [D. C.] 179 Fed. 767); but, aside from the question of intent, the same result must be reached.

Further, any attempt to work out an equitable lien or assignment of an interest in a government contract is impossible. Section 3477, R. S. (U. S. Comp. St. 1901, p. 2320); National Bank of Commerce v. Downie, 218 U. S. 345, 31 Sup. Ct. 89, 54 L. Ed. 1065, 20 Ann. Cas. 1116; Smedley v. Speckman, 157 Fed. 815, 85 C. C. A. 179. Nor can there be an equitable lien against the trustee or against creditors, where the legal title has passed, and where to defeat the legal title would be to carry out a fraud in law, even if the parties had no intent to defraud. As a matter of fact, the government officers gave no

thought to any idea of this sort, and their acquiescence would not have bound the United States, in the face of positive law.

The Badenhausen Company assigned their claim against the Waters-Colver Company to a trust company, and also, a short time after the petition in bankruptcy against the Waters-Colver Company, filed the so-called conditional bill of sale under the laws of the state of New York. The assignee would succeed to the rights of the Badenhausen Company against the bankrupt; but an assignment of this sort would not add any rights against the bankrupt's claim of its contract with the United States, nor has the filing of the bill of sale changed the situation, for there are no subsequent mortgages or purchasers for value since the date of filing. Personal Property Law N. Y. (Laws 1909, c. 45 [Consol. Laws 1909, c. 41]) art. 4, § 62.

If filed before use of the boilers on the government contract, the title would still have passed, and the government would not have been bound to recognize the vendor as a party to its contract with the vendee. This would be in effect an assignment of a part of the vendee's claim against the United States. It is plainly shown that all the parties expected title to the boilers to pass to the United States, but Badenhausen seems to have had the idea that his title to the boilers would be immediately transferred to the $3,500 item of the contract, and that such a claim would be good against creditors of the Waters-Colver Company. Hence his attempt to assign the proceeds to the trust company.

.Conditional sales are valid against the vendee, and against creditors generally, where no fraud is shown. York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782; Wm. W. Bierce, Ltd., v. Hutchins, 205 U. S. 340, 27 Sup. Ct. 524, 51 L. Ed. 828; Bryant, Trustee of Newton & Co., Bankrupts, v. Swofford Bros. Dry Goods Co., 214 U. S. 279, 29 Sup. Ct. 614, 53 L. Ed. 997; Dunlop v. Mercer, 156 Fed. 545, 86 C. C. A. 435; In re Garcewich, 115 Fed. 87, 53 C. C. A. 510. These cases hold that a conditional sale will be tested by the law of the state thereon.

But, as in the case of a chattel mortgage, a reservation of title cannot be coupled with a plain intent to transfer that title. If intent to substitute the proceeds for the chattels be expressed, or be evident from the instrument involved, then the validity of such an intent must be tested by the law of the place where the contract is made.

. A trustee in bankruptcy now has the rights of any creditor, as well as those of the bankrupt himself, and the doctrine of York Mfg. Co. v. Cassell, supra (1905), has thus been amplified. The amendment of the law has entirely validated the statements of the court in the Garcewich Case, supra, at the bottom of page 89, even if there were questions about the point previously. Act July 1, 1898, c. 541, § 47, cl. 2, subd. "a," 30 Stat. 557 (U. S. Comp. St. 1901, p. 3439), as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (U. S. Comp. St. Supp. 1911, p. 1500).

The trustee's rights under this section attached to all property "coming into the custody of the bankruptcy court." This included the claim against the United States (or the money received therefrom).

A creditor holding "a lien by legal or equitable proceedings," on May 24, 1911, would have been able to treat the then unfiled bill of conditional sale as absolutely void. The trustee, therefore, received property which a creditor, with a valid pledge of the bankrupt's assets, would have held against a conditional bill of sale, void (so far as this lien was concerned) for lack of filing.

But the same result is reached if we consider the direct proposition (as held by the commissioner) that a conditional sale of the chattels, where transfer of title of the chattels is contemplated at the time of reservation of title in the vendor, is a fraud and invalid, whether the instrument be filed or not. Such is the decision of the Garcewich Case, and such is the law of New York. Harkness v. Russell, 118 U. S. 663, 7 Sup. Ct. 51, 30 L. Ed. 285; In re Garcewich, supra; Milicie v. Pearson, 110 App. Div. 770, 97 N. Y. Supp. 431; Southard v. Benner, 72 N. Y. 424; In re Carpenter (D. C.) 125 Fed. 831; In re Liberty Silk Co. (D. C.) 152 Fed. 844; Pontiac Buggy Co. v. Skinner (D. C.) 158 Fed. 858; In re George O. Hassam & Son, supra.

It was held in Dunlop v. Mercer, supra, that prior to the amendment of 1910 the laws of Minnesota and other states (In re Gray [D. C.] 170 Fed. 638; Bryant v. Swofford, supra; York v. Cassell, supra; Harkness v. Russell, supra) were to the opposite effect; but the decisions of New York and this circuit are binding here, and a fraudulent attempt to retain title, which would not be binding against creditors, cannot be validated because of lack of understanding that an interest in a government claim cannot be assigned.

The report of the commissioner will be confirmed, and the petition of the Badenhausen Company denied.